**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Z.S, a minor, by her parents and next friends,
H.S. and A.S.,

and

H.S. and A.S.,

    Plaintiffs,

    v.

                                            **Civil Action No. _____**

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, N.W.,
Washington, D.C. 20001,

    Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1.    This is an action brought by H.S. and A.S. ("the parents"), in their own right and on behalf of their daughter, Z.S., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), failed to provide Z.S. with the free appropriate public education ("FAPE"), to which she is entitled under the Individuals With Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.* DCPS denied this student a FAPE when it failed to keep Z.S. safe from bullying for the 2021-2022 school year, and when it failed to determine Z.S. eligible for special education services for the 2021-2022 and 2022-23 school years. The Hearing Officer who heard the administrative Due Process appeal and who decided the action

1

compounded these violations when he ignored the parents' compelling evidence and witnesses, misapplied controlling law, and denied the requested relief. In doing so, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing special education and the provision of a FAPE by denying the parents their requested relief of funding and placement at the Parkmont School. Due to any of these errors, the Court should reverse the Hearing Officer's Decision.

### Jurisdiction

2. This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq.*, and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs have exhausted their administrative remedies and seek to reverse the order of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2022-0083 (July 15, 2023).

### Parties

4. Z.S. is a sixth-grade, educationally disabled student who at all times relevant to this action resided in the District of Columbia. Her parents, H.S. and A.S., bring this action on Z.S.'s behalf and in their own right.

5. The District of Columbia is a municipal corporation receiving federal funds under the IDEA. 20 U.S.C. §§ 1400 *et seq*. DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education. DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled child in the District of Columbia.

**Factual Allegations**

6.      Z.S. is a sixth-grade student who currently attends the Parkmont School in Washington, D.C.

7.      Z.S. is diagnosed with Oppositional Defiant Disorder ("ODD"), Attention Deficit/Hyperactivity Disorder ("ADHD"), and an Unspecified Mood Disorder.

8.      Z.S. began pre-Kindergarten at Powell Bilingual Elementary School ("Powell"), in Washington, D.C.

9.      In August 2017, Z.S.'s parents sought assistance in managing her anxiety and related avoidance behaviors.  The parents observed mood changes in relation to anxiety and or control in many situations and often in response to being told "no."

10.     In early elementary school, Z.S. had multiple meltdowns per day, and her parents worked with Dr. Abigail Romirowsky at The Ross Center to address Z. S.'s behaviors.

11.     Dr. Romirowsky diagnosed Z.S. with Separation Anxiety Disorder and began working with the family using Cognitive Behavior Therapy ("CBT").

12.     In November 2017, the parents reached out to the school to address Z.S.'s social-emotional functioning.  The parents inquired about an IEP, but DCPS staff recommended a Section 504 Plan instead, and did not evaluate Z.S. for special education services.  Instead, DCPS developed a Section 504 Plan with minimal accommodations.

13.     On June 19, 2020, the parents reached out to the school principal to ask about the difference between a Section 504 Plan and an IEP.  The principal said she felt an IEP was not right for Z.S.

14. The Section 504 Plan was last updated in November 2021, but was inconsistently followed and did not sufficiently meet Z.S.'s needs.

15. At the beginning of the 2021-2022 school year, Z.S.'s fifth grade year, she became a victim of peer bullying. Her parents informed the school of the bullying incidents on multiple occasions, but staff failed to take appropriate action to create a safe environment.

16. With the lack of support from DCPS, the parents took additional steps to keep Z.S. safe by providing her with an Apple Watch to contact the family if school staff was unresponsive to the bullying.

17. The intensity of the constant bullying resulted in increased anxiety and impacted Z.S.'s education. Fearing bullying attacks, she no longer wanted to attend school.

18. On November 9, 2021, the parents had a zoom call with school staff to discuss bullying, but instead of addressing the parents' concerns, DCPS focused on what Z.S. had done to trigger the bullying. After the meeting, the bullying and harassment continued.

19. On December 1, 2021, Z.S.'s parents again tried to resolve the bullying by filing a grievance with the DCPS Comprehensive Alternative Resolution and Equity Team (C.A.R.E.). A DCPS C.A.R.E. Team investigator was assigned to the school team.

20. After several follow-up requests by the parents concerning the ongoing bullying, DCPS developed a safety plan for Z.S.

21. The safety plan failed to keep Z.S. safe from bullying.

22. Although the DCPS C.A.R.E. investigator interviewed the parent, he never provided the parents with a report of his findings from the filed grievance.

23. In December 2021, Z.S. underwent a Neuropsychological evaluation by Dr. Hannah Snyder of the Ross Center.

24. Dr. Snyder diagnosed Z.S. with Oppositional Defiant Disorder, moderate, Unspecified Depressive Disorder, and R/O Autism Spectrum Disorder, requiring support for social communication and restricted, repetitive behaviors without accompanying intellectual impairment, without accompanying language impairment.

25. Dr. Snyder made several recommendations for social-emotional and academic supports for Z.S., including a recommendation for an IEP.

26. On January 20, 2022, the parents notified DCPS that they were withdrawing Z.S. from Powell Elementary, and enrolling her in the Parkmont School effective January 24, 2022.

27. DCPS made no attempt to re-engage the parents before or after Z.S.'s withdrawal from Powell.

28. On February 6, 2023, Z.S. underwent a psychological evaluation with Dr. Meagan Wills, a clinical psychologist, to inform the parents regarding current educational planning and treatment. Z.S. was administered the Wechsler Intelligence Scale for Children, 5th Edition (WISC-V), which revealed a Full-Scale IQ ("FSIQ") of 106. Z.S. was also administered the Kaufman Test of Educational Achievement, 3rd Edition (KTEA-3) to assess her academic skills in the areas of reading, mathematics, and written language. Her reading scores fell within the High Average range. Her mathematics scored in the Low Average range, and her written language skills were variable, ranging from the Low Average to Average range.

29. Z.S. was also assessed in the areas of attention and executive functioning by Dr. Wills. Her teachers and parents reported that she has significant difficulty paying attention to details, following through on instructions, and tuning out external distractions.

30. Z.S.'s parents and teachers also reported elevated concerns related to executive functioning, impulse control, self- monitoring, cognitive flexibility, and emotion regulation. The evaluation indicated clinically-elevated concerns for emotional distress and physical symptoms.

31. Z.S.'s parents and teachers reported additional concerns for defiant/aggressive behaviors and separation fears.

32. Dr. Wills diagnosed Z.S. with Oppositional Defiant Disorder (ODD), Attention-Deficit Hyperactivity Disorder-Combined Presentation, and an Unspecified Mood Disorder.

33. Dr. Wills made several educational recommendations for Z.S. including a highly-structured classroom environment, special education services provided via an IEP, a behavior intervention plan, and additional supports.

34. After starting at Parkmont, Z.S. began to receive appropriate supports and make progress.

35. On May 2, 2023, the parents filed a request for due process, and a due process hearing was convened in June 2023.

36. At hearing, Z.S.'s parents presented evidence and testimony from Dr. Paul Livelli, an expert in special education and the family's educational consultant; Nijole Gedutis, the Dean of Students at Parkmont School; Meagan Wills, clinical psychologist and expert in psychology; and Z.S.'s mother.

37. DCPS presented testimony at hearing from Dana Rosenberg, DCPS school counselor; Troy Thomas, Powell School Dean of Culture and Climate; Morgan Hall, Powell School assistant principal and expert in education; Jocelyn Reyes, Powell School Bilingual Teacher and expert in bilingual education; Stephanie Fields, Powell School general education

teacher; O'Kiyyah Lyons-Lucas, Powell School Principal and expert in education; and Courtney Ballard, DCPS Resolution Specialist.

38. The Hearing Officer issued his Decision on July 15, 2023, finding that the parents failed to meet their burden of proving that DCPS failed to comply with its child find obligations during the 2021-2022 and 2022-2023 school years, and denied the parents their requested relief.

39. In his Decision, the Hearing Officer improperly concluded that DCPS did not deny Z.S. a FAPE.

40. The Hearing Officer incorrectly discounted the parent's and the parents' expert witnesses' testimony.

41. The Hearing Officer improperly ignored the parent's detailed evidence of bullying incidents.

42. The Hearing Officer ignored evidence of the parent's request for additional supports to deal with the bullying, name-calling, and social-emotional issues.

43. The Hearing Officer erroneously concluded that the parents did not provide an explanation for declining behavior support services on the Section 504 Plan in 2019.

44. The Hearing Officer inexplicably discounted the testimony of Dr. Paul Livelli, despite his extensive special education background and his qualification as an expert in special education.

45. The Hearing Officer ignored the testimony of Nijole Gedutis, despite her direct and personal knowledge of Z.S., and being the only witness who has interacted with Z.S. in a school setting since January 2022.

46. The Hearing Officer incorrectly discounted Ms. Gedutis' testimony about Z.S.'s initial challenges with behaviors and social interactions with peers at Parkmont, an English-speaking school.

47. The Hearing Officer ignored Ms. Gedutis' testimony about academic and social emotional support that has benefitted Z.S. at the Parkmont School.

48. The Hearing Officer improperly discounted the expert testimony of Dr. Meghan Wills although nothing in the record questioned her credibility.

49. The Hearing Officer improperly ignored the findings of Dr. Wills' psychological evaluation although nothing in the record contradicted its validity.

50. The Hearing Officer inappropriately dismissed Dr. Wills' evaluation despite her recommendations for special education services in the areas of academic achievement, social-emotional functioning, and placement in a small classroom environment.

51. The Hearing Officer erroneously excluded the admission of Dr. Hannah Snyder's 2021 Neuropsychological evaluation despite its relevance and evidence of Z.S.'s longstanding social-emotional functioning deficits.

52. The Hearing Officer improperly gave blind deference to the school system's witnesses' testimony on direct examination, consistently overlooking their responses on cross examination.

53. The Hearing Officer ignored Stephanie Fields' admission that Z.S. had challenges in her class with regulating her emotions and making interpersonal connections with peers despite having a Section 504 Plan.

54. Without reason or justification, the Hearing Officer gave no weight to the documented evidence of Z.S's behavior incidents during the 2019-2020 school year.

8

55. The Hearing Officer improperly found that there was only one student that bullied Z.S. despite testimony from the DCPS witnesses that they were aware of multiple incidents of bullying against Z.S. by many students, including calling her "fat," "smurf," "Karen," and, "white girl."

56. The Hearing Officer improperly disregarded Morgan Hall's admission that Z.S. was having problems with peers, demonstrated incidents of defiance against staff, and that she thought that Z.S. needed more behavior services, but failed to make a referral evaluation for special education and related services.

57. The Hearing Officer incorrectly stated that Jocelyn Reyes did not observe conflict despite her testimony that she witnessed conflict between Z.S. and other students.

58. The Hearing officer improperly disregarded evidence that Z.S. was two grades below level in math during her fifth-grade year.

59. The Hearing Officer ignored Ms. Reyes' testimony that Z.S.'s refusal to speak Spanish in a bilingual school had an impact on her performance, and that she failed to refer her for an evaluation.

60. The Hearing Officer inappropriately allowed opinion testimony from Dana Rosenberg, a lay witness.

61. The Hearing Officer improperly gave considerable weight to Dana Rosenberg's testimony despite her lack of knowledge of Z.S.'s school experience during the 2021-2022 and 2022-2023 school years.

62. The Hearing Officer ignored relevant evidence of the bullying that occurred, and incorrectly concluded that the bullying did not deny Z.S. a FAPE.

63. The Hearing Officer inappropriately excused DCPS from complying with the D.C. Youth Bullying Prevention Act.

64. The Hearing Officer ignored the school system's own witnesses' testimony that the bullying against Z.S. was pervasive.

65. The Hearing Officer incorrectly accepted the DCPS witnesses' definition of bullying.

66. The Hearing Officer improperly concluded that none of the allegations concerning bulling against Z.S. involved physical threats or a physical component or imbalance of power, even though it is not what is required by D.C. law.

67. The Hearing Officer incorrectly determined that Z.S.'s deficits were due to an aversion to speak Spanish and not a disability, erroneously overlooking evidence of Z.S.'s significant needs.

68. The Hearing Officer improperly concluded that the school system's failure to determine Z.S. eligible for special education services was not a denial of a FAPE.

69. Without evidentiary support, the Hearing Officer inappropriately speculated that transferring to a single-language, general education program would be "sufficient."

70. The Hearing Officer improperly accepted the DCPS position of Z.S. having an aversion to Spanish as a valid defense to Petitioner's claims although it was not raised as a defense in the school system's response.

71. The Hearing Officer failed to consider Z.S.'s functional performance and educational impact in the Decision.

72. The Hearing Officer misunderstood the differences between IEP behavior support services and Section 504 behavior support services.

73. The Hearing Officer's analysis of the DCPS Child Find obligation is flawed and incorrect.

74. The Hearing Officer improperly determined that DCPS met its Child Find obligations.

75. The Hearing Officer failed to require DCPS to provide a cogent and responsive explanation for its actions.

76. The Hearing Officer erroneously determined that the parents failed to offer sufficient evidence that Z.S. was eligible for special education services for the 2021-2022 and 2022-2023 school years.

77. The Hearing Officer incorrectly concluded that the evidence did not support a finding that Z.S. requires full-time special education support in a day school.

78. The Hearing Officer improperly dismissed, or disregarded the admission documented evidence of the Powell Principal stating that DCPS failed Z.S.

79. The Hearing Officer inappropriately communicated his opinion of evidence to a DCPS witness during Petitioner's cross-examination of that witness.

80. The Hearing Officer misapplied case law to the facts in the case.

81. The Hearing Officer incorrectly applied the Second Circuit's test of bullying in *T.K. v. New York City Department of Education,* 810 F.3d 869 (2nd Cir. 2016).

82. The Hearing Officer's analysis of *N.G. v. District of Columbia,* 556 F.Supp. 2d 11 (D.D.C. 2008), and *G.G. ex rel. Gersten v. District of Columbia* 924 F.Supp.2d 273 (D.D.C. 2013) is significantly flawed.

83. The Hearing Officer misstated the evidence in portions of his decision.

84. The Hearing Officer's Decision contains multiple errors of fact and law.

11

85. Many of the Hearing Officer's findings of fact are not regularly made.

86. The Hearing Officer applied incorrect legal standards in reaching his Decision.

87. The parents are aggrieved by the Hearing Officer's Decision.

88. The parents have exhausted their administrative remedies.

89. On September 7, 2023, less than two months after the Hearing Officer issued his Decision, DCPS psychologist Shirley Hodges formally reviewed Dr. Wills' psychological report, observed Z.S. at Forman, and talked to current instructional staff.

90. Based upon her review, Ms. Hodges found Z.S. eligible for special education services as a student with an Other Health Impairment, thereby entitling her to an IEP, all in direct contradiction to the erroneous conclusions of the Hearing Officer.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

91. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 90.

92. Defendant's failure to determine Z.S. eligible for special education services violates plaintiffs' rights under the IDEA and District of Columbia law.

93. Defendant's failure to provide Z.S. with a Free Appropriate Public Education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Order Appropriate IDEA Relief)

94. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 90.

95. The failure of the Hearing Officer to order defendant to place and fund Z.S. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

96. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 90.

97. The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

98. The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue judgment for plaintiffs and against defendant;

2. Issue injunctive relief, vacating the order of the Hearing Officer and ordering defendant to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling Z.S. at Parkmont School for the 2021-2021, and 2022-23 school years;

3. Order defendant to place and fund Z.S. at the Parkmont School and declare it to be her current educational placement under the IDEA;

4. Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5. Award any other relief that this Court deems just.

Respectfully Submitted,

                                                /s/ Michael J. Eig

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Matthew B. Bogin | #911552 |
| Meghan M. Probert | #1004929 |
| Jani S. Tillery | #500939 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*